# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | CASE NO. 5:16-CR-0154-SLB-SGC |
| ) | |
| FREDERICK LAMAR BURNETT, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

The court orally ruled on the record with regard this evidentiary issue, but is issuing this opinion to give further rartionale for the court's ruling during trial. The Government filed a Motion in Limine to Exclude Legal Opinion Testimony, (doc. 65), and defendant Frederick Lamar Burnett filed a Motion in Limine to Admit Testimony of Kimberly Ford, (doc. 70). The Government asked the court "to limit the possible testimony about legal advice provided to Defendant." (Doc. 65 at 1.) Burnett asked the court to allow Kimberly Ford to testify as to advice given to Burnett on the ground that her testimony was not inadmissible hearsay and was relevant to Burnett's defense of good faith reliance on counsel's advice and his mental state. (*See generally* doc. 70.)

As noted above, the court orally ruled on these Motions during trial. For the reasons set forth herein, the court finds, as it held during trial, that Burnett's Motion in Limine to Admit Testimony of Kimberly Ford was due to be denied. Therefore, the Government's Motion in Limine to Exclude Legal Opinion Testimony was rendered moot.

According to Burnett, "Ms. Ford will testify regarding her work at the law firm of Dick, Riggs, Miller & Stem, LLP and the advice given by an attorney at that firm, Howell Riggs, to Mr. Burnett regarding his compliance with the relevant contracts." (Doc. 70 ¶ 1.) Outside the presence of the jury, the court heard testimony from Kimberly Ford for the purpose of determining whether there was some foundation for the admission of her testimony regarding advice given to Burnett during a bid protest on one of three government contracts at issue in this case, the contract for backpacks. (*See* doc. 71 at 5-6, 10.) Ford testified:

> From what I recall, it was for – [Burnett] needed some guidance regarding whether or not he could use components in some product that he was making available to the Government for sale, and whether those components, because those individual components were from overseas, that it would still comply with the Buy American Act.
>
> . . .
>
> . . . [As a law clerk,] I did a lot of the research into determining whether or not Mr. Burnett would comply with [the Buy American Act]. So I did research and presented that to Mr. Riggs for his review . . . .
>
> And then we worked on a letter to, I believe, the contracting officer, someone within the Government. And I sat in on the telephone conference calls that we had with Mr. Burnett and the Government in regards to their questioning of him and his components.
>
> . . .
>
> Q. . . . [W]hat do you remember about what [Burnett] told you about how he planned to fulfill the contracts or how he wanted to fulfill the contracts?
>
> A. Some -- there may be some snaps or something really small –

2

> . . .
>
> . . . Some snaps or some small component of whatever the product was he was providing to the Government . . . .

(Doc. 71 at 4-5.) Specifically, she testified that she understood the backpack was to be made in the United States, with only small pieces of the product were coming from overseas and these small components – part of the larger backpack – would comply with the Buy American Act. She testified:

> THE WITNESS: I remember that whatever advice we gave him was that he was in compliance with his contract, and that getting those components from overseas would not make him not in compliance.
>
> . . .
>
> Q. Did Mr. Burnett ever tell you he was having the product, the bag itself, manufactured in China?
>
> A. I don't believe so.
>
> Q. . . . Obviously, that would, based on your previous testimony, that would have changed the advice that Mr. Riggs or you gave him; is that correct?
>
> A. I believe that it would.

(*Id*. at 14.) Ford testified that she did not remember any legal advice given regarding the Berry Amendment and she "understood the backpack itself was being manufactured in the United States," with "just small components" from overseas. (*Id*. at 13, 18.)

Burnett contends that Ford's testimony as to legal advice given is not hearsay because it is not offered for the truth of the matter asserted. (Doc. 70 ¶ 3.) He offers the testimony "to demonstrate that the advice was given." (*Id*. ¶ 4.) "Generally, an out-of-court statement

3

admitted to show its effect on the hearer is not hearsay." *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015)(citing *United States v. Cruz*, 805 F.2d 1464, 1478 (11th Cir. 1986)). Therefore, the court agrees with Burnett that Ford's testimony regarding her advice and Riggs's advice to defendant is not inadmissible hearsay if offered to prove that the advice was given.

Nevertheless, the court found that Ford's testimony was not relevant and its probative value was outweighed by the danger of confusing the issues and misleading the jurors. According to the Federal Rules of Evidence:

Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

Fed. R. Evid. 401. "Relevant evidence is admissible unless [the Federal Rule of Evidence or other law] provides otherwise;" and "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. Indeed, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

"In order to take advantage of [the] defense [of good faith reliance on advice of counsel], the defendant must show that he relied in good faith ***after*** first making a ***full disclosure*** of all facts that are relevant to the advice for which he consulted the attorney."

4

*United States v. Eisenstein*, 731 F.2d 1540, 1543 (11th Cir.1984)(emphasis added; citations omitted), *quoted in United States v. Petrie*, 302 F.3d 1280, 1287 (2002)( to raise this defense, a defendant must present an "evidentiary predicate," which requires proof that he "fully disclosed all material facts to his attorney and relied in good faith on the advice given by his attorney." (quoting *United States v. Condon*, 132 F.3d 653, 656 (11th Cir. 1998)(citing *United States v. Johnson*, 730 F.2d 683, 686 (11th Cir. 1984))))(internal quotations omitted).

Ford's proffered testimony was that Burnett contacted Riggs after the bid protest was filed as to the backpack contract and that this was the only one of the three contracts reviewed by Riggs and Ford. Burnett did not disclose that he was purchasing the backpacks in China; he only told Ford and Riggs that he was using "minute" foreign components. Ford specifically testified that the legal opinion that such conduct did not violate the Buy American Act would likely have been different if she had known that the backpack – and not merely small components – were made in China. The court finds that Ford's "proffered testimony [is] not probative of the elements of the good faith defense," because she testified that Burnett did not fully disclose all facts that were material to the advice given. *See Petrie*, 302 F.3d at 1287. Therefore, Ford's testimony is inadmissible.

Even if the court were to find that Ford's testimony had some relevance, the court would nevertheless exclude the testimony because its probative value, if any, was substantially outweighed by the danger that her testimony would confuse the issues and mislead the jury. First, the advice given concerned only Burnett's response to the bid protest of the backpack contract, and not his compliance with the terms of the contracts for ball caps.

5

This testimony was likely to cause confusion as to the scope of the legal advice and whether Burnett "relied" on this advice when performing the other two contracts. Second the letter written by Riggs during the bid protest addresses only the Buy American Act and Ford could not recall that the Berry Amendment, which applied to each of three contracts, prohibited use of *any* components from overseas. Her testimony regarding Burnett's compliance with the Buy American Act, without consideration of the Berry Amendment, could mislead the jury by implying that compliance with the Buy American Act, and not the Berry Amendment, was all the contracts required. Third, and perhaps most importantly, the Indictment charged Burnett with fraudulently representing that the ball caps and backpacks he provided under three contracts were 100% made in the United States of 100% made in the United States components. Ford testified that the advice from Riggs and herself was based on an understanding that the backpacks were mostly made in the United States and complied with the Buy American Act. Thus, her testimony poses a substantial risk that the jury could confuse the limited and incomplete nature of legal advice – limited to whether Burnett's plan to comply with the one backpack contract violated the Buy American Act if only small or minute components came from overseas – as providing proof that Burnett did not engage in a fraudulent scheme to misrepresent that his ball caps and backpacks were 100% made in the United States of 100% United States materials, as required by all three of the contracts at issue.

Therefore, for the reasons set forth herein and for the reasons stated on the record during the trial, Burnett's Motion in Limine to Admit Testimony of Kimberly Ford, (doc.

70), was denied; Ford's testimony was excluded. Therefore, the Government's Motion in Limine to Exclude Legal Opinion Testimony, (doc. 65), was rendered moot.

**DONE** this 23rd day of June, 2017.

_Sharon Lovelace Blackburn_
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE